We are here for the embankment argument in United States v. Nosal. We have Judge Pregerson appearing by telephone. No, that's Judge Gould over there. I was going to mention him next, but I'm just testing the connection to make sure we're having some trouble with Judge Pregerson. Good morning, Judge Pregerson. Can you hear me? Oh, yes. I'm here, and good morning. You're coming through loud and clear. And good morning, Judge Gould. Are you able to see and hear us? Yes, good morning, Chief Judge. I can see you and hear you. You all look great. Wow, that's a bonus right there. I guess you can't see us then, can you? Must be fuzzy there. In any event, we have — we're ready to go then. And just keep in mind that there are two other judges present who might be asking questions, and so if you hear a disembodied voice, it might be either Judge Gould or Judge Pregerson, so keep that in mind. Counsel, ready to proceed? Good morning, and may it please the Court. I'm Jenny Ellison with the United States Department of Justice, and I represent the United States in this appeal. I'd like to reserve five minutes for rebuttal. This Court should reverse Judge Patel's pretrial dismissal of counts 2 and 4 through 7 of the indictment because those counts properly allege that Mr. Nosel and his accomplices exceeded authorized access within the jurisdiction of the United States. Before you get into the merits, can we just spend a minute or two on jurisdiction? Judge Patel dismissed only those counts and not — there were some counts she did not dismiss. Is that right? Yes, that's correct, Your Honor. And are you convinced we have appellate jurisdiction in those circumstances? Yes, Your Honor. This Court does have jurisdiction under 18 U.S.C. section 3731. That section expressly provides for jurisdiction in this kind of context. I thought we said in Dior that, which is a 1982 case, that a 3731 appeal nevertheless has to be a final judgment for Purposes 1291 in order to be appealed. We said something a little bit different in a later case by Daniel Russell, but I just Your Honor, I believe in the Dior case the issue was one that was not expressly covered by the scope of 3731. And in Dior, the Court concluded that if an action was not clearly described in 3731, that it needed also to be a final judgment. However, the pretrial dismissal of an indictment or counts of an indictment is expressly covered by 3731, so it would fall within the scope of the statute, and there is no need for the Court to worry about the final judgment rule in this context. Okay. Go ahead. In this case, Mr. Nosel's former employer, Korn Ferry, gave its employees a restricted right to access its computers. And Mr. Nosel's accomplices went beyond those restrictions when they accessed those computers for the purpose of obtaining information for Mr. Nosel's competing business. This conduct falls squarely within the definition of exceeds authorized access in 18 U.S.C. Section 1030, and it also constitutes a core violation of subsection A-4. It depends a little bit of what you mean by access, right, and how one defines it. One could define it in a conceptual – as a conceptual limitation. One could also define it as merely applying to physical limitations, your access to this computer or this hard drive, as opposed to that one. Is there anything in the statute that precludes the narrower definition? Yes, Your Honor. The definition of exceeds authorized access itself precludes the possibility that somebody could – that someone could exceed authorized access by going along – going beyond what the technical restrictions on their access would be. In that context, what Congress said exceeding authorized access means is to access a computer with authorization and to use such access to obtain or alter information on the computer that the accessor is not entitled so to obtain or alter. By using the word so, Congress clarified that it was not intending to preclude only those accesses of data that the person is – has no ability to access, is not entitled to access at all, but rather that the issue is whether the person was entitled to access that data in the way they did it in those particular circumstances. The word – to give meaning to the word so, this Court must recognize that a partial – a violation of a partial restriction on access to certain data would fall within the scope of the definition of exceeds authorized access. I guess I'm not sure why you couldn't – why that is necessary. It's possible, but why – why can't you read the so as applying to physical restriction as well? Well, Your Honor, if the – if the term access is intended only to refer to those where someone has – has physical access or no physical access to the computer, then the statute would have no meaning because every time somebody accesses a computer without authorization, they have technical access to the computer. They have done something, you know, in violation of the authorization that has been granted or not granted by the computer owner, but they have achieved physical access. So to give meaning to the statute at all and to make sure that it actually covers conduct, we have to read access as referring to – Well, but that's not necessarily the case. I mean, you can have, for example, in the physical world, you can have employees say, look, you can't go into the computer room, I mean, for lots of reasons. Or computer room is a bad example because it involves computers, but there may be areas where you say employees can't go for a variety of reasons. Contaminated areas, you know, you – but you don't lock the door, but you say you just can't go in there, or you can't go in there unless you are one of the employees that sanitize for dealing with food, and you don't violate physical access. The same thing could be true on a computer where you actually do have physical access. You can do it, but you're just not allowed to go there. You're not – you're not required to do any hacking. It's simply they say you are not authorized to go into that area. Well, why is that not possible? Well, again, Your Honor, that reading of the statute, which is the interpretation that Mr. Nosal is advancing, does not give meaning to every word in the provision. It does not give meaning to the word so, because if the definition that exceeds authorized access is intending only to refer to situations where you have no ability to access the data, the definition wouldn't need the word so at all. Well, no, but if you're not permitted, if you're said, look, you can't go to that hard drive, I mean, just to make it easy, and then you do it anyway. It's available on your computer. You are on the computer connection. There is no password there. You're simply told you're not allowed to go there. And if you do it, you're violating the employer's – you're violating the restrictions, in which case you are doing it. I mean, I don't know why that isn't just as – doesn't give effect to the word so, just as if you were accessing it with an improper motive. Your Honor, the language of the statute would be equally and perhaps more susceptible to that interpretation without the word so. If you are accessing it – But that's not the question. The question is not whether you could do a better job of drafting. The question is whether this is a necessary meaning, which is the question that I'm asking. And I thought you were answering. You said, no, you can't go there because it's not possible. Now, the fact that it could have been better drafted to achieve – I go back and read some of my opinions from 20 years ago, and I have a bunch of words I wish I'd left out. Every time you go back and redraft something, you say, oh, God, what was I thinking of? But unless it's necessary, then it seems to me the answer you have to give is that's a possible interpretation. And if once you're in the world of possible interpretations, aren't we then required to, by the rule of leniency, to adopt the one that's least – that sweeps in the least number of people on the theory that people don't have fair notice? Again, Your Honor, that interpretation is not possible because it does not give meaning to every word of the statute. Well, you said that before, so let's try to understand what you're saying. It seems to me what you're really reading into here is a use component. That's my concern with your interpretation. You could draft this to say, you know, that you're not entitled so as to obtain, for example, and that would mean the same thing. Or you could say so, and it means the same thing as obtaining. But what you're really saying, it seems to me, is that the use that they're making of it is unauthorized, correct? Your Honor, that's not what the government is arguing here. Our position is that the employees were subjected to express access restrictions, that they were not allowed to obtain or alter this information for certain purposes. Well, let's step back. Were they – they were entitled to be on the computer, correct? Yes. In the Corn Ferry system? Well, yes, they had authorization, although in those circumstances, they were not actually entitled to do what they did. Well, under your argument, it would seem you collapse exceeds authorization with authorization. In other words, they're only authorized to be there for a certain purpose. So that wouldn't really distinguish them between authorization and exceeds authorization if we go down that path. Your Honor, we believe the statute draws a distinction between insiders and outsiders. The term without authorization refers to someone who has no ability – who has no authorization to access the computer at all. The term exceeds authorized access refers to someone who has been given limited authority to access that computer and goes beyond those restrictions. And that's what we're alleging happened in this case, that Corn Ferry gave its employees limited rights of access to the computers. And in this case, those access restrictions were based on the purpose that the employees had in accessing the computers. Well, let me ask you why – it seems to me that what you're really arguing falls more clearly under what's known, you know, colloquially as the Federal trade secret statute, the economic espionage statute. Because what you're really saying is they're, in effect, by violating these restrictions, they're converting or basically using what they know to be a trade secret or obtaining what they know to be a trade secret of the company. So why isn't that statute, which really is aimed directly at this, more appropriate than a statute here, which is at the best ambiguous as to what exceeds authorized access means? Your Honor, we disagree that the statute is ambiguous, but with respect to the trade secrets issue, it is true that some violations of Section A – subsection A-4 may also constitute violations of the Trade Secrets Act, but that will not always be true. And moreover, Congress can enact multiple statutes to prescribe the same type of conduct. But subsection A-4 does sweep more broadly than just trade secrets violations. There can be other ways in which other – other types of information that somebody could obtain from a computer in furtherance of a fraud that would not have to do with obtaining the confidential information of, for example, their employer. Kagan. What if you have a government contractor employer that has both national security information, for which they have clearances, and then they have traditional commercial information, and they say, of course, you must have a security clearance in order to access the national security information, does an employee who accesses that, have they violated the authorized access or the exceeds authorized access? If they go straight for the national security information. Well, if the employee has national security – has authority, has the proper No, they have no authority. They have no authority. In that context, if the employee has a limited right to access the computer, they would exceed their authorized access by accessing the national security – the national security information. And that's because they would then obtain information, correct? Well, it would be – Or they would either obtain or access. Yes. They would be exceeding their authorized access because they were going beyond the limitations that had been placed on their use of the computer – their ability to access the computer, and then they would have obtained or altered information. Yes, that's correct. Has the – does the employee violate the act if the employee has security clearance to be into the database, but the government has said, you may access this database as long as you don't sell it to a hostile power, and somebody takes the information to which they are authorized to be there by virtue of their security clearance, but then takes it and sells it to a hostile power, do they violate this act? Well, Your Honor, it would depend on how the access restriction were drafted. But if they accessed information with – if the access restriction said, you may not access this information for purposes of selling it to a foreign power, and they had that prohibited purpose at the moment they accessed the computer and obtained that information, that would constitute exceeding authorized access in the statute. So if they went into – if you – the government could show that they went into the database with the purpose at that time of selling it to a hostile power, you violate the act, but if they went in there, used – got the information, and then later on decided to sell it to a hostile power, that would not violate the act? It would be exceeding authorized access if they did it with the prohibited purpose. It would not be exceeding authorized access if they developed that purpose later. But I do want to be clear that exceeding authorized access without more is not a crime under the statute. Every provision of the statute that includes the term exceeds authorized access actually has additional elements. The provision with which Mr. Nozzle has been charged, subsection A-4, requires that you exceed authorized access knowingly and with intent to defraud, and that you also use that access to further the intended fraud and obtain something of value. But that's – you know, the difficulty is if you have to interpret this phrase across lines for all these subsections, if you look at subsection 2, it's a pretty bare bones. It basically says, you know, if you access without authorization or exceed authorization from any protected computer, and then you jump to protected computer, it basically means any computer in interstate commerce, which is basically every computer in the United States that presumably is either used in business or connected to the Internet. So there you have – you have nothing other than exceeding either the terms of the website or the terms of the employer, and you have a criminal violation, correct? You have a criminal violation when you – when you access Facebook or Google in violation of their terms of service, right? That's actually not necessarily true. Subsection A-2 requires that you exceed authorized access intentionally. So that means that the – Well, I'm sorry. I was precluding the idea that you stumble on Facebook. You know, I've managed to be on my computer for days on end and never stumble onto Facebook. You actually have to sort of – let's say you do it intentionally. I mean, people lie about their age or lie about their e-mail address or lie about whatever. Wait, for example? No. No. On their – when they're talking about themselves on Facebook. I mean, they violated the terms of service because there you actually have to – I think it's Facebook or Twitter. You have to be truthful on all personal information, and I would consider my weight to be personal information along with my age. So wouldn't that – I could be in violation of subsection 2, could I not? Your Honor, you would be exceeding authorized access if you violated the terms of service. But the question would be whether you actually violated subsection A2 by having the necessary intent. And in order for that to happen – What kind of intent do I need? I'm on Facebook and – or I'm on Match.com or some other site, and, you know, I'd just like to – like people do on their driver's license, shade a little bit a few of these facts. I would be violating the terms of service, correct? If you violated the terms of service, that would constitute exceeding authorized access, but it would not necessarily be a crime under the statute. Why? If I did it on purpose, I mean, I know I'm doing it. Well, in order to violate the statute, we believe that – and again, the term intentionally is not before the court in this case. But to intentionally exceed authorized access, you have to actually understand that the computer owner has prohibited you from engaging in that type of access. Well, you've got the – you've got that thing that you scroll down when you have to check, I agree. Click, click, click, I agree. Yes, well, you would – but the government would have the burden in that type of case of proving that the user knew what they were – what they were prohibited from doing and intentionally went beyond the limits that the computer owner had placed on their access. But that's not so difficult. I think a lot of people realize that when they lie, you know – you know, I don't really consider it lies. I think I sort of consider it concealing personal information that it's nobody's business to know. And they realize that – and they intentionally do that to deceive other people finding out information about them. Could be for good reasons or bad or neutral. They may simply want to be on a website like Facebook, but don't want to tell enough about themselves to let, you know, strangers find them in the physical world. So they will conceal their identity by lying about the city or lying – and I don't think they consider it lying, but it's in fact untruthful. Why isn't – what is – where's the doubt there? Why wouldn't that be intentional? They actually mean to go there, they mean to access a page, they mean to do all the things that the website offers, but they also mean to not tell the truth. Your Honor, if in fact the user understood that this was something they were prohibited from doing and yet they intentionally did it anyway, that would fall within the four corners of subsection A2, which is not – And then they would be able to say – That's one of the concerns. You know, you're lying in a hospital bed and you say, oh, I can't check my Facebook. Would you check my Facebook for me? And of course the Facebook terms clearly say that you can't use somebody else's password to go on Facebook. Then basically you have a – not only a sick patient, but a felony or a misdemeanor, right? Would that be a fraud, what Judge McKeown is just saying? Your Honor, it would not be a fraud. It would not fall within – But you don't need fraud for subsection A2, right? But there is no A2 charge before us, is there? I'm a bit confused. I thought what we were reviewing was the district court's dismissal for failure to state an offense under A4. And am I correct that we look at all elements of A4 in order to determine whether it makes out a cognizable Federal crime? Yes, exactly. That's exactly right, Your Honor. We are dealing with an A4 case here. And A4 requires that someone exceed authorized access knowingly and with intent to defraud, and that by such conduct they further the intended fraud and obtain something of value. So do we need to even decide whether or not this would also constitute an A2 violation? Is that question before us? That question is not before the Court. This case does not present – Well, except that if we adopt the one definition for A – for this section, A4, it's very hard to apply a different definition for A2 since you have a unified definition section, don't we? Doesn't access get – I forget what the subsection is there, but there's a section with definitions.  Yes, this Court's definition – So it would be very difficult for us to adopt a definition for A4 that wouldn't also apply to A2, wouldn't it? The definition will apply to A2. Will apply to A2. So in a sense we must construe A2 right now because any definition we adopt for A4 would, in the next case, when you're standing there prosecuting somebody for, you know, allowing somebody else to access their Facebook page, will have to say, well, that was bound by the NOZO definition, right? Your Honor, I can't imagine that the Department would prosecute a case like that. Well, that's right, but we don't really want to allow everybody in the country to be at the mercy of their local U.S. attorney, do we? I mean, that would be exceedingly bad policy and to be avoided at all costs to have – give the hands of the government the ability to prosecute everybody who has an access to a computer and say, oh, I can't imagine they go after it. I mean, that would really be a very dangerous thing to do, wouldn't it? Your Honor, Congress drafted the statute that it drafted. The statute has the scope that its terms require. And the fact that this statute may cover conduct in which many people engage does not mean that the statute is improper or broad. But as you stand there, there's no way you can tell us a way of adopting your definition for A4 that does not expose everybody who lies to Facebook or Google or any – Match.com or Roommates.com doesn't expose them to possible prosecutions as criminals, right? Your Honor, the large majority of people who violate the terms of service for a website, for example, would not be violating subsection A2. Why? The large majority of those people will not – they will not have read the terms of service, will not understand what they are and are not permitted to do. And when they do those things on the – But that's a question of proof, depending on what the government can prove what's going on in their head. And you start off with the fact they have checked the box that says I have read and understand the terms of service. And in my experience, U.S. attorneys tend to be pretty happy when they have something like that, where the person says I have read and understand and accept. You know, of course, you can take the stand and say no, I didn't, but my experience – it's rare for U.S. attorneys to pass something like that up. In this hypothetical case that we're now arguing that's not before us, would we be applying an as-applied challenge, analysis to the challenge? In other words, we would have to ask ourselves, is there any conceivable application of this statute that could constitute an offense? And we'd have to know what the facts were of that hypothetical case. Yes, that's correct, Your Honor. To the extent that this Court is examining a vagueness challenge brought by a particular defendant, that challenge must be handled on the facts of the particular case. Well, of course, but we're not talking vagueness. Well, we're talking definition of the statute. And we're checking as between two different definitions of statutes, which is the one that is likely to sweep in a gazillion people. I haven't said anything about vagueness. I haven't heard Mr. McHugh say anything about vagueness. Nobody said anything about vagueness. It's actually not vague at all. It's really quite perfectly clear. If we adopt your definition of the statute, it's perfectly clear that anybody who knowingly accesses Facebook – I mean, the government might have a problem proving intent in that case, but they start off with a signed declaration. But there's no vagueness. There's nothing as one of the things, gee, I don't know whether I'm covered or not. In your position, they would be covered. They would be violated, right? If they satisfied the – all of the elements of the statute, yes, they would be covered by the statute. So where's the vagueness challenge? What's vague about that? Your Honor, I'm not sure that there is a valid vagueness challenge that that defendant could bring. Sotomayor, I agree with Judge Tauman that we're looking at section 4 for this particular case, but if you would agree that as a foundation, the individual had to have exceeded authorized access, that's what's been charged, correct? Yes. And then there's a series of other things you also have to do, such as knowingly this intent to defraud, et cetera, et cetera. But if the individual doesn't fall within the exceeding authorized access, then it doesn't matter whether the claim is under 2, 4, or one of the other sections, there is no prosecution, correct? That's correct, Your Honor. If someone does not satisfy the exceeding authorized access element of a statute and that is the basis for charging that defendant, there would be no charge. So I think that's why we're trying to crystallize exactly what exceeds authorized access means. You've got about four and a half minutes left. Do you want to save any of that? Yes. May I save the remaining time, Mr. Verbello? Okay. You got it. I will hear from the other side. Good morning, Your Honors. My name is Ted Samsel-Jones, along with Dennis Reardon. I represent the appellee and defendant in this case, David Nosel. Your Honors, the government's interpretation would turn this hacking statute into a very broad computer misconduct statute. It would criminalize the innocuous behavior of millions of employees and Internet users. But isn't the analysis that we have to apply here whether or not this particular charge against your client under 8-4 sets out a prosecutable crime? And don't we look to each of the four elements in order to answer whether on the pleadings a charge has been properly laid? Yes, Your Honor, but that depends on the interpretation of exceeding authorized access. And in interpreting that language, this Court, I think, has to keep in mind what that will mean for the other subdivisions. But in this case, taking the allegations of the indictment as true, we know that there was a written contract which set forth very express prohibitions on terms of access, which your client signed and acknowledged and promised to abide by. And we know from the allegations in the indictment that in violation of that express agreement, your clients accessed this computer system for fraudulent purposes in order to set up a competing business and steal clients that otherwise would have gone to corn and fairy. So where on the allegations in this case did the government go wrong in charging an 8-4 violation? Your Honor, I should clarify one point initially, that the person who accessed the computer was not Mr. Nozol. It was his alleged accomplice, J.F. But her ---- But there's a conspiracy charge, and presumably under Pinkerton, that would be a forfeiture. Absolutely. His liability is premised on accomplice liability or Pinkerton liability alternative. Exactly. But the contract that's relevant for her, for J.F., is her own employment agreement, which we have no idea what it says. Well, at this point ---- She can't be liable based on Mr. Nozol's confidentiality. At this point, we have allegations in the indictment that there were written prohibitions that employees signed, right? There are general allegations that employees had written contracts. We have no idea what J.F. said. Right. Yeah, but no, Your Honor, what fundamentally our position is that written restrictions on use are insufficient. So therefore, the government's allegations here are insufficient to state a claim. Well, in the Rodriguez case in the Fifth Circuit where an employee of the Social Security Administration improperly accessed the computer to stalk former and future women, girlfriends, the Social Security Administration had restrictions on limitation, did they not? Yes. And the employee had to sign an agreement saying, I will abide by them. Yes, Your Honor, we are ---- So shouldn't we follow the Fifth Circuit's analysis, or do you want us to create a circuit split with Rodriguez? Your Honor, there already exists a four-way circuit split. The First Circuit's analysis is different from the Fifth Circuit's analysis in John Phillips. Rodriguez's is the Eleventh Circuit, which is an entirely different analysis. And the Citroen analysis from the Seventh Circuit is different entirely. All of these different circuits have made different definitions about what is the relevant authorization, whether it can be a policy, whether it is general agency principles, whether it is simply norms of expected use, or whether there must be a formal contract. But that's a question of notice in terms of due process violations, is it not, whether or not this defendant can claim that his due process rights are violated because he didn't know under the first element of the crime that his access of the computer system for the purposes that the access was made was in violation of those restrictions. Your Honor, I'm not sure there is ---- there's an open question, and I'm just a little bit surprised to hear the government's concession today, that there is a mens rea requirement that applies to the restrictions. Well, the statute says knowingly and with intent to defraud. That's a specific intent crime, is it not? Well, Your Honor, let me ---- what A-2, for example, says intentionally accesses. But he's not charged with A-2. This is an A-4 case. A-2 is a lesser included, Your Honor, and A-2 will be ---- will come up at trial because Mr. Nozol will dispute the fraud element. So he will ask for a lesser included under A-2c. So the interpretation of A-2c matters critically for this case. All right. And, Your Honor, I think in terms of the statutory language and where the mens rea lies, if you read A-2, for example, it says intentionally accesses a computer without authorization or exceeding, et cetera. The mens rea adverb there modifies the verb access. It doesn't modify the entire provision. There is nothing in the statute that suggests an additional mens rea requirement that you know you're exceeding the terms, that you know you're violating the Facebook terms of service. I'd be happy if the government would stick to a concession to read that in, but that is not sufficient to cabin the scope of this statute. Mr. Sampson, I didn't get your point about A-2 being a lesser included of A-4. What's the significance of that? The definition of A-2 does matter for this particular case because Mr. Nozol's Well, suppose A-2 is invalid for whatever reason, then there wouldn't be a lesser. Your client would just go to trial on the greater. True, Your Honor, but the definition of what we're disputing fundamentally is the definition of the phrase exceeding authorized. Maybe not, but that has nothing to do with whether it's a lesser included offense, does it? No, Your Honor. Are you claiming A-2 is invalid? I haven't heard of that. No, I'm not claiming A-2 is invalid. In fact, how would it be invalid? I mean, it applies to a lot of people, but it's not. No, I don't believe it is. Our position is that under the rule of lenity, it must be interpreted narrowly, more narrowly than the government. I understand that, but you're not claiming it's invalid either way. I mean, the broader statute would be valid. It would be probably making a lot of people unhappy, but. Your Honor, I do think that A-2, if interpreted as the government suggests, and also A-4, would present vagueness problems and also delegation problems, in fact. So you do think it's invalid? Your Honor, I think that the appropriate course. For vagueness, is that right? I think the appropriate course is to follow the Supreme Court's decision in Skilling and apply the constitutional avoidance canon. I'm sorry. In what sense would it be vague? Well, Your Honor, the vagueness doctrine, I think there's a – the vagueness doctrine is in part a doctrine about overbreadth. The Supreme Court has said there's two aspects to it. One is the notice part, which is the sort of actual vagueness part. But the second aspect of vagueness doctrine is really an overbreadth problem. When the scope of a criminal statute is so broad that it gives prosecutors unlimited authority to decide who's guilty and who isn't, that that is a problem, even if it's clear. So I think that's the sense in which there would be a constitutional vagueness problem. And I'll – How would it be vague? I mean, she basically said, look, if there's a terms of service or a contract or a policy, and you violate that, maybe you're under four, maybe you're under aid, under two, but either way, you landed yourself in criminal land. You're exactly right, Your Honor. And I'm just saying that I think that the vagueness doctrine is, in fact, although it – under the term vagueness, it is, in fact, as the Supreme Court has interpreted it, it is largely an overbreadth doctrine. What case do you – I mean, I just wasn't familiar with that prong of overbreadth if it covers too many people. No, Papa Cristo, Your Honor, I mean, the Supreme Court says that there's two aspects to the vagueness doctrine. In Papa Cristo, you know, the statutes are things like walking around without a lawful purpose. I mean, that's clear what it means. The Supreme Court struck it down as essentially being overbroad. But regardless, Your Honor, I don't think – I don't think you need to get to the point of saying that these are constitutionally invalid. The much simpler thing to say is just that the rule of lenity requires a narrow interpretation of both statutes. What does it mean, then? We have a definition under subsection 6 of what exceeds authorized access means. How do you take that definition and apply it to give it some meaning so that you don't collapse authorized access with exceeds authorized access? Let me give an example. If I – I have no right to access the Ninth Circuit computers. If I hack into the Ninth Circuit computers to read your clerk's bench memo about what they recommended about this case, that would be without authorization. At my place of employment, I have access to the server in the basement. But I do not have access to the HR files on that server. If I hack through the technological code-based restrictions at my employer to read other people's HR files, that's exceeding authorized access. So it's essentially – you can think of it as sort of external versus internal hacking. That's what I think both provisions mean. I'm sorry. You, in fact, do have access to our computers through PACER. I just want to make sure I understand. It doesn't change the analysis any, right? Let's say you get into PACER, and you're pretty good with computers, and somehow you manage to get a hold of my bench memos that way. Sure, maybe – so maybe if – I'm not arguing with you. I just want to make sure – it's the same problem, right, as far as you're concerned? Right, but, I mean, there are situations where there's computers in the world that I have absolutely no access to in companies and government agencies and banks. And if I hack into those, that's without authorization. If there's some computer that I have some limited access to, like my computer at work, the server in the basement at my employer, and I hack – The fact is, it's very hard to tell where one computer ends, another computer begins, right? A lot of stuff is in the cloud. So – That's true, Your Honor, but there is – there at some point is a computer out – I mean, with Internet sites, with employer files, there is a computer, a physical computer somewhere with the information that I am accessing. At my – as I say, at my employer, there's a computer in the basement that holds the shared server files. I have limited authorization to access that. I can access the C drive and the D drive, but not the H drive. So – I'm sorry. Go ahead. Well, let me give you this example. I have a computer account here at the Ninth Circuit, and the clerks have access to the Ninth Circuit computers, and they also have access to my computer account. But if I say to them, you can look at my computer account, but you can only use it and use that information for court business. And then I find out – and everybody knows that there's confidentiality, you know, short-term gag order on people who work here. And then I find out that they've actually not only used my computer, which they're entitled to do and they're entitled to look at my e-mail about this case and other cases, but there's been a breach of confidence. Haven't they exceeded their authorized access? No, Your Honor. Our position is that they have not. And the reason is that the type of authorization that matters for this statute is technological authorization, and they haven't breached any technical or code-based barriers to do anything. They've misused it, and they may be liable under other statutes, just as Mr. Nozol may well be liable under another statute, 1832. But she also faces charges under the Economic Espionage Act. There may be other things that criminalize that behavior, but not this provision. So in your sense, does it depend on how you define access? No, Your Honor, but I think there's no dispute here about access, that JF did in fact access a corn-ferry computer, taking the government's allegations as true. So the dispute is about the word access. You say basically your position is that it's technologically based. In other words, by use of codes or passwords or whatever, I quote, access to computer. So you're saying access, because it's part of the definition of exceeds authorized access, that I would have to read, I would have to say exceeds authorized technological access? Let me put it this way, Your Honor. I think that the relevant source of authorization are the technology-based or code-based limitations that an employer or any computer owner places on access. So it is with – it's in the authorization where the technology or code-based component comes in. You mentioned before that there were four different approaches from different  Do I understand correctly they all were decided in favor of the government? Some of them are civil cases, Your Honor, but yes. Do you have any circuit cases that deal with this statute that go your way? Well, I think the best, Your Honor, is the Sixth Circuit's recent decision in Pulte Holmes. Don't forget the Ninth Circuit. Well, Judge McEwen's panel in BRCA, I think, goes our way. And that was, of course, our position to the original panel, that BRCA squarely settles this. But I think looking outside the Ninth Circuit, I think the Sixth Circuit's decision in Pulte Holmes, which was recently decided, suggests that technology or code-based limitation is the right way to interpret E6. But isn't BRCA distinguishable on the grounds that Judge Trott distinguished it in his opinion for the panel, that it didn't involve any evidence of intent to defraud? It didn't involve any evidence of written restrictions. Apparently, the employer had communicated no restrictions. And the employee in that case simply, I guess, decided at some point to breach his loyalty to the employee and access the information. And the argument was that at the moment the employee made that disloyal determination, A2 was violated. But here we have a different allegation of access with intent to defraud in furtherance of a fraudulent scheme. Isn't that a different set of facts that allows us to reconcile the two cases? Well, Your Honor, again, the difference, I mean, we're not disputing at this point that the government has sufficiently alleged the intent to defraud element. What we are disputing is that the government has sufficiently alleged the exceeding authorized access element. So with respect to BRCA But is that – I'm still trying to understand what the challenge is. You're claiming that the term is too vague to be applied to your client under the first element? Is that your claim? My claim is that the phrase exceeding authorized access should be under the rule of lenity interpreted narrowly. Well, but rule of lenity first requires us to determine that the phrase is ambiguous. And exceeding authorized access as pled in this case clearly means in breach of the written agreement that the employee signed setting forth what authorized access was. So what's ambiguous? We disagree, Your Honor. We think that the ambiguity is in the question of what is the source of authorization. And again, there's at least a four-way circuit split on that question about what is the meaningful source of the authorization or permission or entitlement or consent to access. Our position is that the relevant source is the technology or code-based limitations, that that is the best and cleanest interpretation of the without authorization and the exceeding authorization provisions. Then how do we handle the Social Security employee who stalks women with information that he gets from the confidential government computer? Your Honor, not every bad thing that happens needs to be covered by this statute. There are other statutes. So in your view, that shouldn't be a crime? That is not a crime, Your Honor. No, under this statute, under the CFAS. There are other statutes that do stalking. Just as in this, it's not our view that employee misappropriation shouldn't be a crime. It is a crime under section 1832. There are other crimes that punish stalking. What this statute is about is about hacking, not misappropriation. How do you deal with so? Your Honor, I think so. The government and the panel seem to be taking without word. I don't think so incorporates an embezzlement doctrine into this statute. I think all so is is a conjunction in a sentence in this statute. When Congress wants to criminalize crimes of misappropriation or embezzlement, it draws on the common law terminology. This is critical to compare the language in this statute to the language in 1832. 1832 criminalizes acts of misuse. It criminalizes appropriation. It criminalizes conversion. Those are the common law words drawn from the common law crime of embezzlement, which is essentially what the allegations are here. The CFAA does not use any of those terms. It doesn't use any of the common law words suggesting that misappropriation, conversion, or misuse is covered. This is a hacking statute. What it criminalizes is hacking. What it criminalizes is breaching code or technology-based limitations, circumventing code or technology-based limitations in order to obtain or alter information on someone else's computer. Now, the district court did not dismiss count nine, which, as I understand it, alleges entry into the system after these people were no longer employed. So without conceding that your clients are guilty of that offense, hypothetically, would you agree that if a former employee gets back into the company's computer system, that that is covered by the statute? Your Honor, there's actually three counts. There's three CFAA accounts, three, eight, and nine, which are all still live, where the allegations are that one of the co-conspirators used one of the other co-conspirators' passwords. I think that question's not before the court. Our position to the district court was that that doesn't state a claim either, but the district court rejected that. But how is that different from the prototypical hacker that you say the CFAA was designed to address? Because a prototypical... Think of it as a key. Think of passwords as a key, is the best analogy. A prototypical hacker doesn't get the key with permission. A prototypical hacker steals a key or makes a fake key that works. So if someone gives you a key to their office, that's essentially what the allegations in three, eight, and nine are. That's not the same as picking a lock. So basically, I mean, when you leave your employer, you're supposed to turn in your keys, okay? And obviously, you can't, you know, virtually turn in your password if they forget to lock down the system, following up on what Judge Tallman said. I don't see how that doesn't fall squarely, for hypothetical purposes, recognizing you're not making any concession for your client. But I don't see how that wouldn't fall squarely into what you call the technological access, because the way I get in there is technologically I use either a password or a key or some encryption data or something else. Right, Your Honor. The allegations in three, eight, and nine, again, are essentially one person is sitting at a computer and the other person is standing next to her and says, I can either tell you how to run the search or I can just sit down at your computer and do the search myself. And they do the latter. I mean, it's in that nature. So I don't think that's the same as, I mean... And this is after they've left. This is after one of the two has left, the one who ultimately sits down at the computer. So I don't think that's quite the same as picking the lock or stealing. The one who's left has a key that he or she didn't, quote, turn in, so to speak. No. The one who's left doesn't have a key anymore. The one who's left gets the key consensually from the one who's still there. That's called hacking. I mean, it's... No, that's... Well, Your Honor, again, these counts, we're not allowed to cross appeal counts three, eight, and nine. I understand. I understand. Are you satisfied there is jurisdiction here? Your brief is a little ambiguous on that point. Your Honor, in a separate appeal... And the reason, I mean, aside from some normal worry about jurisdiction, I mean, this case might well go another step up. And the last thing one wants to find out after cert's been granted is that, oops, there was no jurisdiction below. So... Agreed, Your Honor. 3731 does not seem collusive to me. What is your view on this? Your Honor, my view initially is that Dior and Russell are flatly contradictory, that they cannot be reconciled. I actually briefed... Because the statute does cover both... I mean, 3731, both dismissing indictment and new tile. Dior dealt with dismissing indictment. I'm sorry, what's another case? Swift dealt with tile. So new tile, so they're really the same case. Yes. You believe they are contradictory. Yes. And I know you sort of like to get this decided in a way, but also what is your view as to which one is correctly decided? Your Honor, I'll just say for the reason we didn't brief... The reasons we're in bank, if there's something to be cleared up, if we need to... I agree. ...sweep away, I'm sorry, I said Swift, I meant Russell. If we need to sweep away one of them, we can't do it. I agree, Your Honor, and I think it makes sense to do so. I've briefed this more fully in other cases. No one's ever listened before, which is why I didn't do so here. So I request the... It was very late last night that I went back and looked at the jurisdictional section of your brief, and I stumbled over that hand gesture. No, I agree. You sort of throw your hands up and say... Well, I throw my hands up because I've asked several times. So what is your position? What is your position on behalf of... Your Honor, my position is that we'd request, if this panel wants to take up the question of which should be swept away, Dior or Russell, that we would request the opportunity for a full supplemental briefing on that. Okay. Fair enough. You don't have a sense now? Honestly, Your Honor, I don't have a very good sense. Put it this way, I'm not sure that there is a plausible argument to be made in Dior's favor, but I'd like the opportunity, if this Court is going to face that question, to look into it more fully and brief the matter. Can you respond, if you could, to one of the arguments made in the amicus brief? I think it was Oracle... Yes. ...who said that this is very similar to a common-law trespass.  Yes, Your Honor. I think this is similar to trespass, but the relevant body of trespass doctrine is the criminal law of trespass, not the tort of trespass. Oracle relies entirely on the tort of trespass. And the criminal law of trespass is much different and much, much narrower than the tort of trespass. And it's different in critical ways for this statute. It's different in the sense of mens rea. The tort of trespass, for example, is essentially a strict liability tort. The crime of trespass requires the specific intent to violate the law and actually knowledge that you have no claim of right to enter land. They're different in really critical ways. And one... Is that inconsistent with what we held in Theofel? Your Honor, again, this relates to Theofel. One difference is that the criminal law doctrine, the criminal law distinction between fraud in the inducement and fraud in the factum is different than the tort law distinction. I don't think we drew that distinction in Theofel. Well, Theofel was a civil case, Your Honor, and I think this Court relied to some extent on the distinction between whether the initial permission was obtained by fraud and relied to some extent on the distinction, the old common law distinction between inducement... I'm... Perhaps I didn't understand your answer to Judge Mergia's question. So are you saying when we apply the criminal law, we apply the criminal trespass doctrine, whereas when we have a civil case, we apply the civil trespass doctrine? What I'm saying is that to the extent that you want to import trespass into this statute, it makes more sense to look to criminal trespass rather than tort trespass. And for... Let me give an example of one of the differences, a concrete example. This is actually drawn from Oracle's brief. This is Illustration 5 of Section 862B of the Restatement of Torts. It says that if A has sex with B and conceals the fact that he has a sexually transmitted disease, that renders consent invalid and therefore A has committed the tort of battery. In the criminal law, that is absolutely not true. If A has sex with B and conceals the fact that he has a sexually transmitted disease, it is not thereby rape. It does not... Violation of a condition of that sort does not render consent invalid in the criminal law, even though it does in tort law. And so that's, I think that sort of gets to the question here, because authorization, entitlement, permission, consent are all after the same concept. But it's still a felony battery, is it not? No, Your Honor. It is in Washington State. Your Honor, it is not in most jurisdictions. And I would, you can, this precise thing is discussed in Lafayette. I'm sorry, just a moment. I heard the word battery, but I didn't hear the full question. The question, I think, was if you have a communicable disease and you have sex with B, felony battery. Your Honor, there's modern statutes that deal with knowing transmission of communicable diseases. But under the general common law of consent in criminal law, fraud about a condition like that, fraud about a fact like that does not render consent invalid. But your criminal trespass analogy, if you enter the land knowing that you are not authorized to do so because there was a sign on the fence that said no trespassing and you climb over the fence anyway, how is that different from the situation here where the employee enters the computer knowing that he's doing so in violation of the written contract that he signed? But, Your Honor, if there's in the criminal law of trespass, say there's some condition that says you can come onto my land and do what you want, but you can't take pictures and you take a picture. Suppose the sign says no hunting or trespassing and you trespass with the intent to hunt. Your Honor, that's generally those types of conditions. And there's not – I can see there's a somewhat lack of clarity because the criminal law of trespass is somewhat scattered. It seems to me criminal trespass applies here just as much as it would in the U.S. But, Your Honor, it's not true in many jurisdictions that that constitutes criminal trespass, even though it constitutes the tort of trespass. And you can – I'd just refer you to Lefebvre's criminal treatise, section 6.5a, which discusses this very topic, the difference between what renders consent valid and invalid in criminal law versus in tort law. Your Honors, I would just finish by saying that the government suggested in response to the questions about the breadth of conduct that is covered by this that we – that they simply assured us that they won't prosecute innocuous conduct like that. This is the exact same thing that Mr. Dowling said in his congressional testimony last month. Congress is concerned about this and is considering amendments to narrow the statutes. The DOJ's response is, don't worry, you don't need to narrow it because we won't prosecute that people. Kennedy, he did prosecute somebody for rape? Ms. Drew. Laurie Drew, yes. I mean, they eventually didn't appeal, but – Right. And that's what they said in testimonies. Well, we didn't appeal. But they will not – they will not disavow the theory. They want to maintain their power to prosecute this. They just – their assurance that they won't do it often. And I just submit, Your Honor, that that is not sufficient, that whether I'm a criminal for visiting an inappropriate website at my work in violation of my employer's social networking policy should not depend solely on the whims or the grace of a United States attorney in my district. Thank you, Your Honors. Thank you. Ms. Sample-Jones. Ms. Ellickson, you have 4 minutes and 21 seconds. Yes, Your Honor. I have three points in rebuttal. The first point is that the definition that Mr. Nozell is proposing this Court adopt if exceeds authorized access isn't supported by the language of the statute, because nothing in the statute indicates that this Court or anyone else can draw a distinction between types of access restrictions. If the computer owner has restricted access to the computer and the person has gone beyond those restrictions, that person has exceeded authorized access. This is not a situation where we have a statute dealing solely with hacking. The statute is broader in its focus than that. It's focused on a multiple, you know, multiple types of abuse involving computers. And the definition just is not consistent with what Mr. Nozell's interpretation. Ms. Ellickson, I wanted to make sure and ask you, is Subsection 8-2 a lesser-included offense of this particular section? Your Honor, it is not. In this case, the version of the statute under which Mr. Nozell was charged, the version of Subsection 8-2c present in that version of the statute required, among other things, that the conduct involve an interstate or foreign communication. That's not an element of Subsection 8-4. Furthermore, the mens rea requirements of the statutes are different. So Subsection 8-2 is not a lesser-included offense. I'm sorry. So if they ask if we were to reverse, you go back and they ask for a lesser-included offense instruction, you would oppose it? And do you think – I mean, there's always a difference in elements. I mean, that's why it's lesser-included. You might have a lesser mens rea requirement, for example. But are you saying that it's not and you would oppose and the district court would be wrong to give a lesser-included offense instruction? Your Honor, I can't speak for what the trial attorney would do in that situation. But in terms of the elements of the provisions, yes. Well, I'm sorry. I mean, it's the United States. It's not the trial attorney. I mean, I'm asking for the position of the United States on the question of whether this is or is not a lesser-included offense. It is not a lesser-included offense. The elements – The trial attorney would have no choice but to oppose it then. It's not a question of discretion, right? That's probably true. That's correct. Did that change come about with a change in the definition of protected computer? Or where did these changes come about when you're talking about the statute at one time and then a later statute? The statute was amended in 2008 to eliminate the requirement in 82C that there must be a communicate – the conduct must involve an interstate or foreign communication. And the statute also revised the definition of protected computer at that point, although protected – But would that also include interstate or a computer used in interstate or foreign transaction or commerce, correct? I mean, it basically took it from over here and put it under protected computer as near as I could tell. Or maybe you can explain that they did something differently. Your Honor, I think the – I may be misremembering the exact legislative change, but I believe the 2004 version required that the computer be used in interstate or foreign commerce. And in 2008, the statute was revised to include computers that also affect interstate or foreign commerce. I believe that was the change, but again – I am now completely confused. What is it you think is now the different element that makes 820 a less included offense? The version of the statute that was in place when Mr. Nozl was charged, subsection A2 included an element that is not present in subsection A4. It also included a different mens rea requirement. Okay. What are those two things? What element and what mens rea? So the additional element in subsection A2C was that the conduct had to involve an interstate or foreign communication. And the – additionally, the mens rea requirement was different, and it is still different today. Does it still have the foreign – interstate or foreign requirement? That the conduct involve an interstate or foreign communication? I don't believe that it does. I think the current version of the statute does not have that requirement. So the only difference in the current version of the statute, because he wouldn't – if this goes back, he wouldn't be prosecuted under the old version. He would be prosecuted under the new version, correct? Your Honor, the conduct, I believe, occurred before the 2008 version of the statute was passed. So he would be governed by the 2004 version of the statute. But I'm still not understanding how that's different from the necessary interstate nexus that you would have to have for all federal crimes. Well, a computer can be used in interstate or foreign commerce without necessarily the conduct at issue involving an interstate or foreign communication. For example, a computer that is connected to the Internet and engages in – regularly engages in other types of interstate communications would be involved in interstate or foreign commerce. But it wouldn't necessarily – the communication here wouldn't necessarily be covered by that. And my last question – I'm sorry – is for – in terms of elements of the offense, would the exceeds authorized access be an element of both offenses under A-4 and A-2? It's an alternative element. You could either be charged on the basis that you exceeded your authorized access or on the basis that you acted without authorization. So not every prosecution would involve an allegation of exceeding authorized access. But either one of those would have to be an element of the offense. Yes. One of the two requirements would have to be satisfied for both versions. For both versions. Yes. Thank you. The second point that I just wanted to clarify – Your Honor, this time you better move very quickly. I will, Your Honor. The second point that I just wanted to clarify is that we are not talking here about restrictions on use. We are talking about restrictions on access. And this is not a case about misappropriation. This is a case about the violation of access restrictions. And then the third point that I wanted to make is that with respect to the Dior case, which was decided in 1982, I believe that involved the dismissal of an indictment when that conduct was not covered by Section 3731 at that point. In 1984, I believe Congress amended the statute to make it expressly clear the dismissal of an indictment or counts of an indictment was something for which the government could bring an interlocutory appeal. So with those closing remarks, thank you. Thank you for your time. And we request that the Court reverse the district court's decision. Thank you. The case is heard. We will stand to submit the word, Your Honor. All rise.
judges: Kozinski, Pregerson, Silverman, McKeown, Wardlaw, Gould, Paez, Tallman, Clifton, Bybee, Murguia